IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DESTINY BROWN, individually and as** | : | |
| **the surviving parent of Shulena A. Weldon,** | : | |
| **and as administratrix of the estate of** | : | |
| **Shulena A. Weldon,** | : | |
| Plaintiff | : | No. 1:14-cv-00988 |
| | : | |
| v. | : | |
| | : | (Judge Kane) |
| **STEVEN L. NOVACEK, et al.,** | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is the motion to dismiss Plaintiff's amended complaint by Defendants City of Harrisburg and Harrisburg Bureau of Police. (Doc. No. 13.) For the reasons that follow, the Court will grant in part and deny in part Defendants' motion to dismiss.

**I.  BACKGROUND**[1]

This motion to dismiss concerns the liability of the City of Harrisburg and the Harrisburg Bureau of Police ("HBP") for the death of Shulena Weldon, a pedestrian struck and killed by an allegedly distracted police officer driving an HBP vehicle. (See Doc. No. 13.) On the morning of August 9, 2012, Officer Steven Novacek, driving a marked HBP Chevrolet Tahoe, struck Weldon as she was walking across Market Street in Harrisburg, Pennsylvania. (Doc. No. 4 at 5.) Weldon eventually died from injuries she sustained. (Id.) Novacek was sending a reply to a text message on his cellular phone at the time of the accident and was exceeding the posted speed limit by more than five miles per hour. (Id. at 5-6.) Because he was distracted, Novacek did not

---

[1] The following background is taken directly from the allegations from Plaintiff's amended complaint (Doc. No. 4), accepted as true for the purposes of this motion only.

brake before the impact or swerve to avoid Weldon. (Id. at 6.) Novacek was not responding to an emergency at the time of the accident, but was instead driving the HBP vehicle on a personal errand as permitted by official policy. (Id. at 8.) Policymakers from the city and the police department knew that HBP officers habitually sent and received text messages while driving official vehicles, and that HBP officers often exceeded speed limits even in non-emergency situations. (Id. at 7.) Officers received little or no training regarding the use of cellular phones while driving official vehicles, even though a state law prohibits sending or receiving text messages while driving. (Id.) Plaintiff also alleges that Officer Novacek is party to a "police code of silence," by which officers protect each other "by fabricating accounts to the media and in official reports and [in] internal affairs investigations." (Id. at 7-8) (internal citations omitted). Plaintiff specifically names former Harrisburg Mayor Linda Thompson and HBP Chief Ritter, claiming that they as policymakers failed to implement sufficient training about the use of cellular phones while driving and about speeding in non-emergency contexts, and that their training failure caused Novacek to run over Weldon. (Id. at 14.)

On January 8, 2013, Plaintiff Destiny Brown, Weldon's mother, initiated this suit by filing a complaint in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. No. 1 at 1.) After Plaintiff amended her state court complaint to include a claim against the municipal defendants (the city and the police department) under 42 U.S.C. § 1983, Defendants removed the action to federal court on May 22, 2014. (Id. at 6.) In addition to her federal civil rights claim, Plaintiff advances state law claims of negligence, negligent entrustment, wrongful death, and vicarious liability, as well as a survival action. (Doc. No. 22 at 4.) Municipal Defendants filed the current motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 18,

2014, claiming that Plaintiff failed to sufficiently plead both her Section 1983 federal claim and her state law negligent entrustment claim. (Doc. No. 13 at 5, 9.) Municipal Defendants also ask the Court to dismiss the HBP, because it is not an entity subject to suit,[2] and to declare that Plaintiff cannot recover punitive damages against the city as a matter of law. (Id. at 5, 9-10.)

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent

---

[2] Police departments are not "persons" subject to liability under Section 1983 unless they are entities apart from the municipal government. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997). Therefore, and because the parties agree that the Harrisburg Bureau of Police should be dismissed from this action, (Doc. No. 22 at 5-6), the Court will dismiss the Harrisburg Bureau of Police as a defendant.

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III. DISCUSSION

This memorandum will address: (A) the Court's consideration of outside evidence; and (B) Plaintiff's municipal liability claim.

### A. Outside evidence in a motion to dismiss

This case began in state court more than eighteen months ago, and the parties have already conducted much discovery. In their reply brief, Defendants urge the Court to consider key portions of the discovery material in its disposition of their pending motion. (Doc. No. 20 at 3-4.) Defendants attach twenty-three pages of exhibits, including: (1) an inter-office memorandum dated July 5, 2000, purporting to be the city's official policy on cell phone usage; (2) a listing of streets in Harrisburg with speed limits of twenty-five miles per hour; (3) a photograph apparently taken at the time of the accident; (4) a copy of Defendant Novacek's telephone bill from the time of the accident; (5) excerpts from Defendant Novacek's deposition. (Id. Exhibits A-D.) However, "courts generally consider only the allegations contained in the

complaint, exhibits attached to the complaint and matters of public record," when evaluating the sufficiency of a challenged pleading. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Further, while a court may consider evidence beyond the pleadings, the Court will do so only if the attachments are "undisputedly authentic," if the non-moving party's claims rely on the attachments, and if the moving party attaches the outside evidence to its motion to dismiss. Id. at 1196-97; see also Miller v. Clinton Cnty, 544 F.3d 542, 550 (3d Cir. 2008) (considering a letter in employer-defendant's motion to dismiss where the plaintiff's claims relied "only upon that letter.").

In the present case, Plaintiff's claims do not "rely" on any of the proffered attachments. Plaintiff's Section 1983 claim against the Municipal Defendants does not rest upon Defendant Novacek's telephone bill or a time stamped photograph. While these documents may be probative as evidence, they have no independent legal significance: they are not, for example, contracts or threats upon which a claim is legally founded. Cf. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("Given that the exhaustion issue turns on the indisputably authentic documents related to [plaintiff's] grievances, we hold that we may also consider these [on a motion to dismiss.]") (emphasis added); see also Miller, 544 F.3d at 549-550 (considering a letter on motion to dismiss where the plaintiff claimed that the letter itself was protected speech). In addition, Defendants did not attach the exhibits they urge to be dispositive to their motion to dismiss or brief in support, but rather attached the exhibits to their reply brief after Plaintiff had filed her memorandum in opposition to the present motion. The attachments Defendants present may be properly submitted with a motion for summary judgment, but the Court finds that it would not be proper to consider them in conjunction with Defendants' motion to dismiss for

failure to state a claim. Accordingly, the Court declines to consider Defendants' attachments at this stage of the proceedings.

### B. Plaintiff's municipal liability claim

In its amended form, Plaintiff's complaint raises a claim under 42 U.S.C. § 1983 for municipal liability based upon a failure to train employees. (Doc. No. 4 at 11.) The gravamen of Plaintiff's Section 1983 claim is that the city does not adequately train police officers about the use of cellular phones while driving or about the dangers of speeding in non-emergency situations, and that the failure to train Officer Novacek caused Weldon's death in violation of her substantive due process rights.[3] (See id. at 11-14.)

Section 1983 provides redress for those deprived of federal rights by persons acting under color of state law. 42 U.S.C. § 1983. Section 1983 allows victims of constitutional torts to recover monetary damages from those state actors that caused the wrongful deprivation. See Carey v. Piphus, 435 U.S. 247, 255 (1978) ("[D]amages are available under [Section 1983] for actions found to have been violative of constitutional rights and to have caused compensable injury.") (citations and emphasis omitted). In limited circumstances, municipalities may be liable under Section 1983. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690-92 (1978). There is no vicarious liability in this context, so a plaintiff must show that "lawmakers

---

[3] Plaintiff mentions two other potential constitutional theories in her amended complaint. Plaintiff refers to "equal protection" under the Fourteenth Amendment, but no other allegation in her complaint supports that theory. (Doc. No. 4 at 2-3.) In addition, Plaintiff devotes a sentence to "an underlying violation of Weldon's Fourth Amendment rights." (Doc. No. 18 at 6.) However, the remainder of that section of her brief concerns substantive due process, and the Supreme Court held in County of Sacramento v. Lewis, that substantive due process is the operative constitutional provision in cases like this one. 532 U.S. 833, 842-44 (1998). Accordingly, the Court will dismiss Plaintiff's amended complaint to the extent that Plaintiff is asserting a claim under either of those provisions.

or [people] whose edicts or acts may fairly be said to represent official policy" adopted a custom or policy that caused a constitutional violation. Id. at 693. A city may affirmatively adopt such a policy through a council vote or similar enactment, or a city may be liable for a custom that has obtained the force of law "by virtue of the persistent practices of state [or local] officials." Adickes v. S. H. Kress & Co., 398 U.S. 144, 167 (1970). Though "it may seem contrary to common sense," municipal liability may be based on a failure to train police officers, because a city may "actually have a policy of not taking reasonable steps to train its employees." City of Canton v. Harris, 489 U.S. 378, 390 (1989) (emphasis added). The United States Court of Appeals for the Third Circuit has described the "substantive elements" of a municipal liability failure-to-train theory as (1) a custom or policy of inadequate training; (2) the municipality's deliberate indifference to that inadequacy; and (3) a causal nexus between the training inadequacy and the constitutional deprivation. Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996); Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). More recently, however, the United States Supreme Court has cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

  Defendants move to dismiss Plaintiff's municipal liability claim. In determining whether Plaintiff has stated a municipal liability claim against the City of Harrisburg, the Court first assesses the sufficiency of Plaintiff's allegations regarding the existence of a custom or policy of inadequate training. The Court then assesses the sufficiency of Plaintiff's allegations of deliberate indifference. The Court concludes by addressing the municipal defendants' argument that Plaintiff's municipal liability claim must be dismissed, because Plaintiff does not lodge any

constitutional claims against Officer Novacek as an individual.

### 1. Custom or policy of inadequate training

Plaintiff uses the words custom, policy, and practice in her amended complaint to describe the municipal defendants' alleged failure to train police officers. (E.g., Doc. No. 4 at 12.) According to Plaintiff, the city "developed and maintained a policy of deficient training of its police force, including the use of [cellular phones] while a vehicle is in motion and the dangers of speeding over the posted speed limit in a non-emergency situation." (Id.) According to her complaint, "[t]he actual practice or custom of the HBP is to disregard the law regarding the use of [cellular phones] and speeding over the posted speed limit in non-emergency situations." (Id. at 12.) Plaintiff suggests that either the city affirmatively adopted a policy of not training police officers or that the city had adopted a custom of failing to train its police officers. (See id.) Plaintiff alleges that the city "did not provide any training regarding the use of a [cellular phone] while driving." (Id. at 6.)

In the failure-to-train context, plaintiffs face "a two-path track to municipal liability, depending on whether a § 1983 claim is premised on a municipal policy or custom." McTernan v. City of York, PA, 564 F.3d 636, 657-58 (3d Cir. 2009) (citations omitted). For a "policy," A city is liable under Section 1983 when its decisionmakers, endowed with municipal authority, affirmatively adopt a policy like a deficient police training program that then causes a constitutional deprivation. See Adickes, 398 U.S. at 167. For a "custom," a city may be liable under Section 1983 for constitutional deprivations caused by municipal practice "even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91. "A course of conduct is considered to be a 'custom'

when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." McTernan, 564 F.3d at 658 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)). When a claim turns on police training, liability may arise either from the explicit adoption of the training program that is impermissibly deficient, or from the implicit adoption of a custom of not training police; in either case no municipal liability may attach "under circumstances where no wrong could be ascribed to the municipal decisionmakers." See City of Oklahoma City v. Tuttle, 471 U.S. 808, 821-22 (1985).

The Court finds that Plaintiff has sufficiently plead the existence of a municipal custom. A "custom," may carry the force of law without formal approval, so long as the established practice has been condoned by municipal policymakers. See Adickes, 398 U.S. at 166-68. Here, Plaintiff alleges that the Harrisburg authorities had a custom of allowing their officers to skirt state law (Doc. No. 4 at 12), and that the Harrisburg authorities had adopted the custom of not training their officers about speeding and distracted driving (see e.g., id. at 12). Plaintiff also names the former mayor and police chief as those policymakers who endorsed the custom(s). (Id.) While a plaintiff is required to plead specific inadequacies in the defendant-city's training program, see Kneipp, 95 F.3d at 1215, the Court is satisfied that Plaintiff has fulfilled the pleading requirements on this issue, because the Plaintiff has specifically alleged that the city provided no training at all in the area of cellular phone use (see Doc. No. 4 at 6.) While Plaintiff is very far from proving that such customs actually existed or from proving that the mayor or police chief endorsed them, she need not do so at the pleading stage.[4]

---

[4] Ultimately, Plaintiff will need to prove the existence of a custom of not training officers or the existence of an affirmatively adopted inadequate training policy, but not both. See Oklahoma City, 471 U.S. at 821-22. Here, Plaintiff has sufficiently plead the existence of a

## 2.     **Deliberate indifference**

Plaintiff's amended complaint repeatedly uses the term "deliberate indifference" in reference to the municipal defendants' failure to provide training to its police officers. (E.g., Doc. No. 4 at 12) ("This failure to train its employees in a relevant respect reflects a deliberate indifference [by the municipal defendants] to the rights of the city's inhabitants and is actionable under 42 U.S.C. § 1983.")  Plaintiff alleges that Defendants "knew or should have known" about the risks of not training its police officers about distracted driving, "but never provided the requisite and proper training."  (Id. at 9.)  According to Plaintiff, Defendants should have known that the training was required, because police texting and speeding "ha[s] been a major problem," (id. at 10), and because there was an "obvious risk" of constitutional harm (id. at 12). Plaintiff continues: "[O]fficers using a [cellular phone] while driving and/or speeding in a highly populated area made the violations of Shulena's constitutional rights, including her death, a reasonable probability."  (Id.)

A plaintiff seeking to impose liability on a municipality for failure to train must plead that the municipality, through its policymakers, acted with "deliberate indifference" in adopting a custom or policy of inadequately training its police.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 124 (1992).  Deliberate indifference is a very high standard to meet, requiring at the pleading stage that a plaintiff make a plausible factual allegation that a municipal actor disregarded the known or obvious consequences of his or her actions.  See Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 410 (1997).  To raise deliberate indifference in a failure-to-train action, a plaintiff is ordinarily required to plead a "pattern of

---

custom.

similar constitutional violations by untrained employees." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011); Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). There is one exception to the requirement that plaintiffs plead a pattern of constitutional violations: the "single-incident" theory or exception. Connick, 131 S.Ct. at 1361.

Rather than arguing that she has sufficiently plead a pattern of violations, Plaintiff argues that her claim fits within the single-incident exception. (Doc. No. 18 at 11-13.) The single-incident theory originated in City of Canton v. Harris, 489 U.S. 378 (1989). In that case, the Supreme Court reasoned that "in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Bryan County, 520 U.S. at 409 (explaining the Supreme Court's reasoning in City of Canton, 489 U.S. at 390 n.10). When there is an "obvious need for specific . . . training," and a municipal policymaker chooses to ignore that obvious need, the Supreme Court has hypothesized that a pattern of constitutional violations resulting from the inadequate training policy need not be shown. Connick, 131 S.Ct. at 1361. Normally, the requisite pattern of violations puts policymakers on notice that their training program is inadequate, but in single-incident cases the need for formal training is so obvious that notice may be assumed. See id. The Supreme Court hypothesized that deliberate indifference could be demonstrated based on a single incident if a municipality had failed to train its armed police officers about the constitutional limits of deadly force in pursuit scenarios. City of Canton, 489 U.S. at 390 n.10. In that context, the city's policymakers would "know to a moral certainty" that police would be regularly faced with a situation where, absent training, the police would cause constitutional violations. Id. The Supreme Court hypothesized that officers without legal

11

expertise obviously require training concerning the often-complicated contours of an individual's constitutional rights in the realm of deadly force. Id. The Supreme Court considered the single-incident theory again in Connick, a case stemming from the alleged failure of the New Orleans district attorney to train his deputies about Brady v. Maryland, 373 U.S. 83 (1963).[5] Connick, 131 S.Ct at 1361-62. The Connick plaintiff had been wrongfully convicted of murder and sentenced to death. Id. at 1355-56. After his sentence was later vacated because the deputy district attorney violated the Brady rule, the plaintiff sued the district attorney, arguing that the failure to train the prosecutor in his case alone was sufficient to establish Section 1983 deliberate indifference. Id. The Supreme Court disagreed, holding that single-incident deliberate indifference could not be shown, because unlike the hypothetical police officers in City of Canton who "ha[d] no knowledge at all of the constitutional limits on the use of deadly force," the prosecutors could have learned about Brady elsewhere, specifically in law school. Id. at 1362-63. As such, no especially obvious need for specific training existed. Id.

In the present case, the Court finds that the need for formal training was not "so obvious" as to permit a finding of deliberate indifference based on Officer Novacek's actions alone. This case is not analogous to the hypothetical in City of Canton because the obvious need for specialized training is absent here. Plaintiff writes that "the dangers associated with texting while driving are so patently obvious such that a failure to provide training in this regard is deliberate indifference." (Doc. No. 18 at 13.) Plaintiff mischaracterizes the inquiry: while the obviousness of the danger may play a role, it is the need for training that must be patently

---

[5] As a matter of due process, the "Brady rule" forbids prosecutors from withholding relevant favorable evidence from a criminally accused. 373 U.S. at 87-88.

obvious for the single-incident theory to apply.  As Plaintiff points out in her amended complaint, Pennsylvania has a law in place banning the use of cellular phones while driving, and speed limits are authoritative.  (Doc. No. 4 at 6.)  The dangers of distracted driving and of speeding are easily understood and widely known.  Police officers certainly have knowledge of the dangers of speeding and of texting while driving.  As such, even assuming that an inadequate or non-existent formal training policy on texting while driving or speeding could amount to deliberate indifference, such inadequacy cannot constitute deliberate indifference absent a pattern of constitutional violations.  Accordingly, the Court will grant Defendants' motion to dismiss, because Plaintiff has not adequately plead that municipal policymakers exhibited deliberate indifference to the inadequacy of their own training program.

### 3.     Defendants' argument that individual unconstitutional action by Officer Novacek is required

In their motion to dismiss, Defendants argue that because Plaintiff does not lodge any constitutional claims against Officer Novacek as an individual, "there is no basis for imposing Section 1983 liability against the City." (Doc. No. 13 at 5-6.)  According to Defendants, Plaintiff must show that Novacek's actions "shocked the conscience" in order to establish a constitutional violation, and that absent a showing that Novacek himself committed a constitutional violation, the municipality cannot be held liable under Section 1983.  (Id. at 6.)

Defendants' position, while consistent with the law in other jurisdictions, is not an accurate statement of jurisprudence in the Third Circuit.  Elsewhere, the United States Court of Appeals for the Fourth Circuit has held that a Section 1983 substantive due process claim for failure-to-train "cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee." Young v. City of Mt. Ranier, 238 F.3d

13

567, 579 (4th Cir. 2001). The United States Court of Appeals for the Third Circuit, however, has repeatedly come to the opposite conclusion:

> "[T]he district court dismissed the municipal liability claims against the City of Philadelphia on the basis that the plaintiffs failed to establish an underlying constitutional violation [however,] the precedent in our circuit requires the district court to review the plaintiffs' municipal liability claims independently of the section 1983 claims against the individual police officers, as the City's liability for a substantive due process violation does not depend upon the liability of any police officer."

Kneipp, 95 F.3d 1199, 1213 (emphasis added); Brown v. Pennsylvania Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003) ("It is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees [is] liable."). Defendants cite to both the en banc and the panel decisions in Fagan v. City of Vineland, a case that concerned both individual and municipal liability for a death that occurred during a high speed police chase. 22 F.3d 1283 (3d Cir. 1994), en banc, 22 F.3d 1296; (Doc. No. 17 at 17, 19.) The en banc decision addresses individual liability and pronounces that, for an individual officer to violate the constitution, the offending officer's conduct must "shock the conscience." Fagan, 22 F.3d at 1308-09 (en banc). The panel decision, however, addresses municipal liability, holding that "a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers . . . even if no individual officer . . . violated the Constitution." Fagan, 22 F.3d at 1294 (panel opinion). Because the law in the Third Circuit does not require a plaintiff to show a constitutional violation on the part of the individual employee in substantive due process failure-

to-train claims based on Section 1983, Plaintiff need not do so here.[6]

**IV.    CONCLUSION**

For the foregoing reasons, the Court will dismiss the Harrisburg Bureau of Police from this action, and will dismiss Plaintiff's Section 1983 claim against the City of Harrisburg without prejudice. If she chooses to do so, Plaintiff should file an amended complaint addressing the pleading deficiencies identified in this memorandum. The Court will defer consideration of Plaintiff's state law claims pending the filing of an amended complaint. An order consistent with this memorandum follows.

---

[6] The Court also recognizes that punitive damages are not available against a municipality in Section 1983 actions. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.")